UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| GERALD J. FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:10-CV-49 |
| v. | ) | |
| | ) | |
| JEAN GIGLI, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

**I. INTRODUCTION**

Plaintiff Gerald Foster is suing Defendant Jean Gigli, a Fort Wayne police detective, under 42 U.S.C. § 1983, asserting that his arrest by Gigli on January 4, 2010, for cocaine dealing violated the Fourth Amendment to the United States Constitution because it was without probable cause and was effectuated in his apartment without a warrant.[1] Gigli now challenges these claims in his Motion for Summary Judgment (Docket # 62), arguing that he had probable cause to arrest Foster for drug dealing and that even if Foster's markedly different version of the arrest is believed, he consented to Gigli entering the apartment.

Ultimately, because Gigli had probable cause to arrest Foster, the motion for summary judgment will be granted on that claim. But because Foster has raised an issue of fact concerning whether he consented to Gigli's entry into his apartment—something Gigli contends—the unlawful arrest claim must proceed to trial.

---

[1] Foster abandoned all other state and federal claims against Gigli arising out of this incident. (Docket # 67.) Subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (Docket # 48.)

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

The facts leading up to Foster's arrest began on December 14, 2009, when a Fort Wayne police detective, Brian Martin was contacted by a reliable confidential informant ("CI") with whom he had previously worked. (Martin Aff. ¶¶ 3, 26.) The CI stated that he/she had been in contact with a suspect that he/she knew as "Gerald." (Martin Aff. ¶ 3.) The CI was able to provide Gerald's cell phone number. (Martin Aff. ¶ 4.) All of the information provided by the CI was independently corroborated by police records on Gerald Foster. (Martin Aff. ¶¶ 4, 5.)

The CI stated that Gerald was selling cocaine, and Detective Martin arranged with other Fort Wayne undercover detectives to conduct a controlled buy of cocaine that night from Foster using the CI. (Martin Aff. ¶ 6.) The controlled buy between the CI and Foster, in which the CI gave Foster some money in exchange for cocaine, was electronically and visually monitored and under the constant surveillance of Detective Martin. (Martin Aff. ¶¶ 8, 11, 18.)

After the sale, Detective Martin field-tested and weighed the suspected cocaine, and it tested positive. (Martin Aff. ¶¶ 22, 23.) The CI then identified Foster from a six-person photo array as the person who had just sold the cocaine. (Martin Aff. ¶ 27.)

Three weeks later, on January 4, 2010, Detective Martin met with Gigli. (Martin Aff. ¶ 29.) Detective Martin told Gigli that they had conducted a controlled drug buy from Foster, that there was probable cause to arrest him for dealing cocaine, and that the probable cause affidavit had been prepared. (Martin Aff. ¶ 29; Gigli Aff. ¶ 3.) Detective Martin then asked Gigli to take Foster into custody. (Martin Aff. ¶ 29.)

---

[2] The brief factual recitation contained in this section is drafted in a light most favorable to Foster, the non-moving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

Later that morning, Gigli, who was in full police uniform, and Detective Angela Reed went to Foster's residence, an apartment at 1930 Hobson Road, Apt. D-106, to serve him with a probable cause affidavit for dealing cocaine.[3] (Gigli Aff. ¶ 4.) The two officers approached Foster's front door, knocked, and announced "Fort Wayne Police Department." (Gigli Aff. ¶ 5.) Foster, who was in bed, was summoned by his then girlfriend and went to the door. (Foster Aff. ¶ 2.) Through the door, Gigli reported that they had received a 911 hang up and wanted to make sure that everything was okay. (Foster Aff. ¶ 3; Gigli Aff. ¶ 5.) Foster told the officers that "you got the wrong address" and was returning to bed when the officers knocked again, this time harder. (Foster Aff. ¶ 4.) When Foster repeated that they had the wrong address, "the officer [presumably Gigli] said, 'open the door or we're kicking it in!'"[4] (Foster Aff. ¶ 4.)

To prevent any damage to the door, Foster unlocked it, without opening it. (Foster Aff. ¶ 5.) As soon as he unlocked the door, Gigli, without permission, pushed his way in and pushed Foster on a table. (Foster Aff. ¶ 5.) Foster was then arrested.[5] (Foster Aff. ¶¶ 6, 7.)

---

[3] It is not explained why Gigli was serving only a probable cause affidavit on Foster and not an arrest warrant.

[4] In a Motion to Strike (Docket # 69), which is fully briefed (Docket # 70, 72, 76), Gigli seeks to excise this statement from the record as hearsay and also because it may have come from Reed who is not a party. These arguments fail, however, because the statement is not hearsay under Federal Rule of Evidence 801(c)(2). In general, when the purpose of the admission is to show the effect the statement had on the listener, it is not offered for the truth of the matter asserted and is not hearsay. *United States v. Griffin*, No. 1:11-cr-65-TWP-TAB, 2012 WL 5377875 at *2 (S.D. Ind. Oct. 31, 2012) (quoting *United States v. Hanson*, 994 F.2d 403, 406 (7th Cir. 1993) ("An out of court statement that is offered to show its effect on the hearer's state of mind is not hearsay.")). In short, the statement was not offered for the truth of the matter asserted—that the officers were going to break down Foster's door—but rather to show the coercive effect of the statement on Foster. Moreover, to say that the statement came from Reed (a contention not supported in the record) would draw an inference against Foster, something the Court cannot do at this stage. Accordingly, the motion to strike is denied on this point. The balance of the motion to strike is moot because Foster's unlawful arrest claim would survive even if the motion were granted.

[5] Gigli's version of events has Foster voluntarily opening the door, and since Gigli immediately identified him, he arrested Foster on the spot. (Gigli Aff. ¶ 6.)

3

## III. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

## IV. DISCUSSION

### A. *Foster's False Arrest Claim Fails as a Matter of Law*

Foster was arrested for Dealing in Cocaine under Indiana Code § 35-48-4-1, which makes the knowing or intentional delivery of cocaine a felony. Foster claims, however, that Gigli did not have probable cause to arrest him. His skeletal argument is grounded on two propositions: the events for the arrest occurred on December 14, 2009, some three weeks before the actual arrest, and the probable cause affidavit—the one Gigli served on January 4,

4

2010—was not filed with the Allen Superior Court until four days after the arrest, on January 8, 2010.

"Probable cause is an absolute defense to a claim of wrongful arrest under section 1983 against police officers." *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013) (citing *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012)). Although probable cause is generally determined by the jury, a court may rule on it as a matter of law if the facts are undisputed. *See Duvall v. Kroger Co.*, 549 N.E.2d 403, 405-06 (Ind. Ct. App. 1990).

Here, on January 4, 2010, Gigli was informed by Martin, a fellow detective who possessed first hand knowledge, about Foster's delivery of cocaine to a CI through a controlled drug buy on December 14, 2009. Gigli was then provided with a copy of Martin's probable cause affidavit, which the next day was submitted to a Judge of the Allen Superior Court and found adequate to support the issuance of an arrest warrant for Foster. Foster makes no argument that Gigli should not have relied on Martin's recitation or that either Martin or the CI were not reasonably credible. *Abbott*, 705 F. 3d at 716 (citing *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007) (articulating that an officer is entitled to rely on information from a fellow law enforcement officer)).

And while Foster seems to assert—unsupported by any legal authority—that too much time passed from the alleged illegal conduct on December 14 to the date of his arrest three weeks

5

later, he does not suggest that probable cause thus dissipated or had grown stale. Stated another way, "[t]here is no requirement that 'an offender be arrested the moment probable cause is established.'" *United States v. Mitchell*, No. 10-CR-20094, 2012 WL 478120, at *3 (C.D. Ill. Feb. 14, 2012) (quoting *United States v. Reis*, 906 F.2d 284, 289 (7th Cir. 1990)). And while the record does not reveal why there was some delay, that alone does not call into question the adequacy of probable cause. *Id.* (quoting *United States v. Winchenbach*, 197 F.3d 548, 554 (1st Cir. 1999) ("[W]hen probable cause exists, the timing of an arrest is a matter that the Constitution almost invariably leaves to police discretion.")).

Further, there is no indication that the probable cause for Foster's arrest grew stale in the interim. There is no suggestion, for instance, that Martin, who actually observed and heard the controlled drug buy, ever received new information calling into question Foster's guilt. *Id.* (citing *Russell v. Devereaux*, 389 F. App'x 557, 560 (7th Cir. 2010) (quoting *United States v. Bizier*, 111 F.3d 214, 219 (1st Cir. 1997) ("[P]robable cause to make an arrest grows stale only if it emerges that it was based on since discredited information." (internal quotation marks omitted)).

Finally, Foster claims—again without any legal support—that his arrest on January 4, 2010, was infirm because the probable cause affidavit was not filed with the Allen Superior Court until January 8, 2010. The rationale behind this assertion is unclear since Foster does not elaborate, but the basis for probable cause for arrest is determined from the facts known to the officer at the time, and not subsequently. *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006). As previously observed, however, Gigli had probable cause to arrest Foster on January 4, 2010, and therefore the fact that the affidavit was actually filed some four days later is no legal

6

basis for liability.

Accordingly, since there was no Constitutional violation surrounding Foster's false arrest claim, it fails as a matter of law.

### B. *Foster's Unlawful Arrest Claim Must Proceed to Trial*

Gigli also seeks summary judgment on Foster's unlawful arrest claim, in which he claims that Gigli violated his Fourth Amendment rights by entering his apartment without a warrant, exigent circumstances, or his consent. When viewing the facts in the light most favorable to Foster, Gigli's motion for summary judgment on this claim must be denied.

"It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Welsch v. Wisconsin*, 466 U.S. 740, 748 (1984) (citation and internal quotation marks omitted); *see also Payton v. New York*, 445 U.S. 573, 587 (1980). "Absent exigent circumstances or consent, an entry into a private dwelling to conduct a search or effect an arrest is unreasonable without a warrant." *Steagald v. United States*, 451 U.S. 204, 214 n.7 (1981); *see Harney v. City of Chicago*, 702 F.3d 916, 925 (7th Cir. 2012) ("A warrantless entry into a residence to effect an arrest is presumptively unreasonable under the Fourth Amendment."). "When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do." *Kentucky v. King*, 131 S. Ct. 1849, 1862 (2011).

Here, it is undisputed that Gigli did not have a warrant for Foster's arrest,[6] and he does not suggest that exigent circumstances warranted his entry into Foster's apartment. He contends,

---

[6] *Cf.* IND. CODE § 35-33-2-3((b) ("A law enforcement officer may break open any outer or inner door or window in order to execute an arrest warrant, if the officer is not admitted following an announcement of the officer's authority and purpose.").

rather, that Foster consented to his entering the apartment. (Mem. of Law in Supp. of Def.'s Mot. for Summ. J. 11-15; Reply Br. 6-10.)

More specifically, Gigli argues that Foster voluntarily opened the door after he and Detective Reed knocked and announced "Fort Wayne Police Department," stating that they had received a 911 hang up and wanted to make sure that everything was ok. (Gigli Aff. ¶ 5.) He then handcuffed Foster and sat him in a chair just inside the apartment door, after which Gigli took five steps into the apartment and read him the Miranda warning. (Gigli Aff. ¶¶ 6, 7, 10, 11.) Gigli says that Foster did not object to his stepping into the apartment or tell him to leave. (Gigli Aff. ¶ 12.)

But Gigli's argument ignores the basic principle on summary judgment that the Court "must construe the record in the light most favorable to the nonmoving party." *Payne*, 337 F.3d at 770. According to Foster, who the Court must credit at this juncture, after the officers knocked he told them through the closed and locked door that they had the wrong address. (Foster Aff. ¶ 4.) When the officers knocked louder a second time, Foster reiterated that they had the wrong address, to which the officers responded: "'[O]pen the door or we're kicking it in!'" (Foster Aff. ¶ 4.) Foster then unlocked the door but did not open it. (Foster Aff. ¶ 4.) Almost immediately, Gigli pushed his way into the apartment without permission. (Foster Aff. ¶ 4.) Thus, per Foster's telling, he did not expressly consent to Gigli entering the apartment and did not open the door.

Yet, "[e]xplicit verbal consent to enter a dwelling is not necessary to constitute consent for the purposes of the Fourth Amendment." *Dantzler v. City of Chicago*, No. 11-cv-1476, 2013 WL 707879, at *3 (N.D. Ill. Feb. 21, 2013). "[C]onsent may be manifested in a non-verbal

8

manner." *Harney*, 702 F.3d at 925. For example, the Seventh Circuit Court of Appeals, "on more than one occasion, has found that the act of opening a door and stepping back to allow entry is sufficient to demonstrate consent." *Id.* (citing *United States v. Walls*, 225 F.3d 858, 862-63 (7th Cir. 2000); *Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 690 (7th Cir. 2001)). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Dantzler*, 2013 WL 707879, at *3 (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). Thus, the question boils down to whether a reasonable person would consider Foster's unlocking of the door, without opening it, sufficient to manifest his consent to Gigli's entering the apartment.

It is possible that Foster's "turning the deadbolt may have shown that he was willing to talk with the officers face-to-face." *Turk v. Comerford*, 488 F. App'x 933, 942 (6th Cir. 2012) (unpublished). "But, without more, there is nothing about unlocking a door that demonstrates consent—unequivocal, specific and intelligently given—to an officer's entry into a home." *Id.* (citation, internal quotation marks, and emphasis omitted). In any event, "[t]he fact that a person answers a knock at the door doesn't mean that he agrees to let the person who knocked enter." *Hadley v. Williams*, 368 F.3d 747 (7th Cir. 2004).

Regardless, even if Foster did mean to consent to the officers' entry by unlocking the door after they threatened to kick it in, "[w]here there is coercion there cannot be consent." *Dantzler*, 2013 WL 707879, at *4. That is, "[c]onsent obtained through 'official intimidation or harassment is not consent at all. Citizens do not forfeit their constitutional rights when they are coerced to comply with a request that they would prefer to refuse.'" *Id*. (quoting *Florida v.*

9

*Bostick*, 501 U.S. 429, 438 (1991)). A reasonable factfinder could conclude that the officers' threatening to kick Foster's door in if he did not open it "was coercive and therefore vitiated any consent that [he] gave." *Turk*, 488 F. App'x at 942; *cf. Davis v. Novy*, No. 03 C 572, 2004 WL 2491632, at *8 (N.D. Ill. Nov. 2, 2004) (finding that plaintiff's consent was voluntary where he admitted that he signed a consent form and that the officers were never threatening or offensive).

In fact, the Supreme Court indicated as much in *King*, 131 S. Ct. at 1863, when after holding that banging on the door and announcing "police" was conduct consistent with the Fourth Amendment, it commented that it "was aware of no other evidence that might show that the officers either violated the Fourth Amendment or threatened to so do (for example, *by announcing that they would break down the door if the occupants did not open the door voluntarily*)." (Emphasis added). *See also United States v. Jerez*, 108 F.3d 684, 705 (7th Cir. 1997) ("Compliance with a police 'demand' is not consent." (citation omitted)). Consequently, on this record, even if Foster did intend to consent by unlocking the door, Gigli is still not entitled to summary judgment on the unlawful arrest claim because there is evidence of coercion. *Cf. Walls*, 225 F.3d at 863 (finding agents' actions consistent with the Fourth Amendment where there was no evidence that they "demanded entry" or were allowed entry "in submission to authority" rather than voluntarily).

### C. Issues of Fact Preclude Finding Qualified Immunity as a Matter of law

Finally, Gigli argues that he is entitled to qualified immunity from Foster's claim of unlawful arrest. "[Q]ualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. Vill. of West Milwaukee*, 671

10

F.3d 649, 657 (7th Cir. 2012) (quoting *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010)); *see Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "Claims of qualified immunity involve two inquiries: (1) whether the official violated a constitutional or statutory right; and (2) whether the right was clearly established at the time of the alleged misconduct." *Gonzalez*, 671 F.3d at 657 (citing *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010)). "A negative answer to either question entitles the official to the defense." *Id*. (citing *Hanes v. Zurick*, 578 F.3d 491, 493 (7th Cir. 2009)). "When the qualified immunity inquiry cannot be disentangled from the disputed facts, the issue cannot be resolved without a trial." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540-41 (7th Cir. 2009).

Gigli should have known that, without an arrest warrant, his threat to kick the door in if Foster did not open it was coercive. "It is, of course, clearly established law that a consent . . . received under duress or coercion is ineffective." *Johnson v. City of Harvey*, No. 95 C 7687, 1998 WL 381702, at *12 (N.D. Ill. June 30, 1998); *see, e.g.*, *United States v. Groves*, 470 F.3d 311, 321 (7th Cir. 2006); *United States v. Duran*, 957 F.2d 499, 502 (7th Cir. 1992). Thus, on the facts viewed most favorably to Foster, Gigli should have known that he did not have non-coerced consent to enter Foster's apartment and thus that such actions violated the Fourth Amendment. *See, e.,g.*, *Dantzler*, 2013 WL 707879, at *5; *Johnson*, 1998 WL 381702, at *12.

Accordingly, on this record, Gigli is not entitled to summary judgment on the basis of qualified immunity. *See White v. Gerardot*, No. 1:05-cv-382, 2007 WL 541819, at *7 (N.D. Ind. Feb. 15, 2007) ("[W]hen factual disputes surrounding the conduct at issue bear directly upon whether it was objectively reasonable for [the officer] to believe he acted in compliance with clearly established law, then summary judgment on the issue of qualified immunity must be

11

denied." (internal quotation marks and citations omitted)).

## V. CONCLUSION

For these reasons, Gigli's motion for summary judgment (Docket # 62) is GRANTED for all of Foster's claims except for his unlawful arrest claim arising under the Fourth Amendment to the United States Constitution. The Motion to Strike (Docket # 69) is DENIED with respect to paragraph 4 of Foster's Affidavit and is otherwise deemed MOOT.

SO ORDERED.

Enter for this 19th day of March, 2013.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge